Oral argument not to exceed 15 minutes per side. Mr. Kairos for the appellant. Good morning. Matt Kairos along with my colleague Ken Gross for First American. I have saved five minutes for rebuttal. There are many issues in this appeal but I'd like to focus on two. First the FDIC standing and second problems with damages in the trial below. The big issue in this case is whether the FDIC had the right to sue First American for breach of a Closing Protection Letter or a CPL that was issued in connection with a Washington Mutual loan transaction because the FDIC sold Washington Mutual's loan files along with the rest of all of its assets to Chase Bank. We all know the story of the Wham-oo failure. In a span of hours in the fall of 2008, Wham-oo failed, it was seized by the FDIC, and it was promptly sold in bulk to Chase Bank for $1.88 billion pursuant to a very short 30-page form government contract. And that contract, that purchase agreement which the FDIC agrees is clear and unambiguous, transferred all of the loan files, including CPLs like the one at issue here, to Chase. We're here because the district court refused to consider the issue. The district court refused to look at the purchase agreement and apply its terms. So didn't the FDIC and Chase stipulate that the CPL was not transferred by FDIC to Chase? Yes, Your Honor. During the pendency of the case, after the close of discovery, Chase signed a stipulation given to it by its regulator after it had recovered and settled with First American stating that the CPLs stayed with the FDIC. But that doesn't matter. It doesn't matter because in the Sixth Circuit, where a contract is clear and unambiguous, we don't look to the parties' expressions of intent. We look to the clear provisions of the agreement, and that is what controls. When you raise the issue of standing, what's the basis of standing for First American to challenge whether that closing protection agreement, whatever it's called, CPL, was transferred? I mean, Chase's First American is not a third-party beneficiary, not intended to be. They're really, I guess, a stranger to that purchase agreement. Absolutely. That is correct. They are not a third-party beneficiary. An issue of standing is an issue of jurisdiction. There is no question in this case about jurisdiction. The FDIC's cases about a stranger to the contract does not have standing to interpret it all involve non-thirty-party beneficiaries who attempt to bring a lawsuit under a contract to have it apply and protect them. And the problem with that is where you are not a third-party beneficiary, you can't articulate an injury to a legally protected interest because contract law does not compensate non-thirty-party beneficiaries for injuries when the contracting parties breach the contract. Here, however, there is no question of jurisdiction. First American, in fact, was sued, and so all it is doing is pointing to evidence. And in fact, the FDIC's case on that point, which is the Deutsche Bank case, proves our point. There you had Deutsche Bank sue the FDIC and said, you retained repurchase liabilities in connection with tranches of mortgages, and so you have to buy them back from me. The purchase agreement, the same one here, the purchase agreement says you have to buy them back. That case is still pending. Some bondholders tried to intervene and tried to get protections, and that court said, you don't have standing. But they didn't dismiss Deutsche Bank, and all Deutsche Bank was doing in that case, like First American is doing here, is saying somebody has the repurchase obligations. It's either the FDIC or it's Chase, and we think it's the FDIC, and the purchase agreement is evidence of that. That's what First American is doing, saying somebody owns the CPL. The agreement is clear that the person who owns the CPL is Chase, and we're simply pointing to evidence. It's not a standing issue. Those are jurisdictional cases by somebody who tries to sue. I notice both you and the FDIC submitted 28 J letters citing, opposing Florida District Court decisions on whether the CPL is linked or not linked to the title policy. You've got a case in your favor. The FDIC has a case in their favor. Neither are binding on us. I guess it's just persuasiveness, right? That is correct. It's just persuasiveness. Is there any Court of Appeals case or Supreme Court case that says whether the CPL is or is not linked with the sale, or is this an open question? It's an open question with respect to the contract. I think what Your Honor is asking me is, are there any circuit court that says CPLs, by nature, have to move along with the title policy? We cited fleet mortgage, a number of other decisions, and the FDIC, in fact, says it's industry practice that says they go together. We also point to the language of the CPL itself that says we're offering this protection when title insurance is offered. I gather there's no circuit case that you can cite that absolutely says that it runs with the land or runs with the sale? No, Your Honor. I couldn't find any either. Let's now focus on Section 3.5 or Schedule 3.5. Clearly, the FDIC did not sell to chase this loan wholesale. Clearly, the agreement carves out certain things that were not sold to chase, right? It does. All right. So we've got to interpret what does Schedule 3.5 say about what there's not purchased. And Subsection 2 seems to cover it now. What does that language mean? You tell me. Well, that language is general language. If you look at that provision, it comes in the context of chase keeping claims against officers and directors and auditors and all of those third parties that brought down the downfall of Washington. It doesn't say that. It doesn't limit it. I don't see auditors or officers. It just says chase does not purchase any interest, right, action, claim, or judgment against any other person whose action or inaction may be related to any loss, et cetera. I mean, that's the language. Right. But that is a subsection of that global paragraph that references all those other things. It is a general provision that speaks to retaining claims against any person whose action or inaction may relate to a loss. Here, the FDIC doesn't dispute that it didn't retain the title policy. And it is impossible to try to wedge a CPL into that provision when a title policy itself is not in that provision because both of them relate to First American's contractual agreement to identify relating to fraud by third parties. So if the CPL was held back under that policy, under that provision, the title policy would have to be held back. Now, the CPL and the title policy cover different possible losses, do they not? Yes, they do. One relates to defects in title. The other is fraud of your agent. Right. But your Honor's question was, why is the CPL not a claim against any other person whose action or inaction may be related to any loss? And my point is, a title policy would, by the same terms, even though it ensures against a different risk, by the same terms a title policy would also be a claim against any person whose action or inaction may be related to any loss. And to be clear here, the action or inaction is not the fraud of the title agent. Right. That is a derivative claim. First, the title agent who clearly was engaging in fraud here was not the common law agent of First American, rather simply a closing agent. So the action or inaction that we're speaking of is the failure to pay on an indemnity obligation. It's not the fraud itself. It can't be. And that's why the payment on a title policy, payment on a CPL, are both simply contract obligations, and they have to go together at least under this provision. The last answer to that question is, that's a general provision, and general provisions in a contract that are as vague as that cannot trump specific provisions. And there are three of them in the purchase agreement. The two that I'd like to focus on is, first, that the purchase agreement sold all of Washington Mutual's loans, which included all rights, claims owned by or accruing to the holder of the loans. Secondly, and more importantly, it expressly sold Washington Mutual's credit documents. That was defined as any agreement relating to or executed in connection with a loan. The FDIC cannot contend here that that CPL was not executed in connection with the loan. As a matter of fact, the title policy was the consideration for executing that CPL. So these were both documents tied up into the loan. And when the FDIC transferred all of those loan files, it had to go along with it under the terms of that agreement. I would like to briefly speak on damages, and that is... Be very brief, because your time is running out. Okay. The FDIC simply did not prove any damages at trial. These loans were sold for $1.88 billion, and they concede they would have gotten the exact same amount, whether or not there was a fraud or whether or not there was a loan included. So instead, they relied upon book value. But book value bears no relation to the actual money they received for the loans. And worse off, they didn't offer any testimony as to why book value changed. They simply offered some numbers that said at one point on Washington Mutual's books, the loan was valued at this, and at another point, it was valued at this. There was no testimony as to why. For all we know, it was because the real estate market crashed in their actual loss, and they offered no testimony, no testimony whatsoever of their actual loss. It ended up with a damages award in excess of the loan amount. First American ended up paying $4.9 million on this, and the loan was only for 4.5, because Chase got 3.1, and the jury awarded 1.8 plus interest, 2.2 total. So the end result of this, because there was no damages proof, is that First American paid out more than the loan amount. And under the principles of double recovery, neither Judge Batani nor the FDIC could seriously contend that under the CPL and title policy, when First American insured this, that it was insuring these parties or indemnifying these parties for more than their lending risk. Hey, we appreciate your argument. Your time has expired. I know there's a lot to be argued here. Let's hear from the FDIC, and you'll have your full rebuttal time. Good morning. May it please the Court. Jerome Madden, representing the FDIC as receiver for Washington Mutual Bank. First American began withstanding, and so I will as well and they rely on this Deutsche Bank case, which is pending in a district court in the District of Columbia, and argue that they're in the same position as Deutsche Bank. And Deutsche Bank is suing JPMC and the FDIC over which of those parties assumed liabilities for residential mortgage-backed securities. The FDIC and JPMC disagree about which, under Deutsche Bank is the plaintiff, and Deutsche Bank has been able to participate in discovery on that issue, but the issue of Deutsche Bank being able to participate in what the P&A agreement means on that has not been decided by the district court. So that's just not the case that Deutsche Bank supports First American because Deutsche Bank is not a third party beneficiary, yet it's participating in what the contract means. It's just not the case. The Deutsche Bank case that you're referring to, is this the district court case or the D.C. Circuit case in 2013? I'm referring to the district court, well they're both. I handled the intervention appeal in the D.C. Circuit, it's the same case, but the issue on appeal is whether these bondholders can intervene in courts that they didn't have standing, prudential or otherwise. I think Judge Donnell has a question. You talked about and construed the case, the Deutsche Bank case, but what specific language in the closing protection letter gives, do you contend gives the FDIC standing to bring a breach of contract claim without holding the related title insurance policy? So I want you to now go to the language of the closing protection letter and tell us what part of that you rely on for your position. Yes, Your Honor, the closing protection letter provides that First American agreed, quote, to reimburse you for actual loss incurred by you. And where are you reading from now? Which part? This is, I'm reading from page six of our brief, Your Honor, where we quote the CPL language that's relevant, and it provides that the FAA agreed, quote, to reimburse you for actual loss incurred by you in connection with such closing when conducted by the issuing agent, which is Patriot title, when such loss arises out of fraud. And clearly the CPL begins with Washington Mutual, its successors, the underwear signs. And so it clearly covered the fraud here. It begins by saying it's directed to Washington Mutual, its successors, the underwear signs, which implies clearly that the title insurance policy and the CPL were not directly linked, that there's no express language saying you can't assign one or the other. It begins to address the Washington Mutual and its successors, the underwear signs. And so the fact What about the language cited by opposing counsel that says that part of what the FDIC sold to Chase involved all instruments related to these loans? Why wouldn't the CPL be related to the loan, just like the title policy was related to the loan? First of all, yes, Your Honor, under section schedule 3.5 of the Purchasing Assumption Agreement, it clearly carves out the CPL. And here's why. Couldn't clearly carve it out, but give me your best. Well, I believe it does, Your Honor. It's nice if it said that, but it doesn't say that. That's what makes this so messy. Well, we can agree to disagree on that, Your Honor. It provides, quote, any right against any person whose actions may be related to any loss incurred by Washington Mutual Bank. And clearly, this is a contract right under the CPL, and it's against First American, whose actions are related to the loss, because it was its agent that committed the fraud. So it absolutely, clearly carves out the CPL. And the language that counsel cited in section two about credit documents, there's no definition of what credit documents are, and that just cannot be reconciled with 3.5. The FDIC routinely and historically has retained all claims dealing with fraud or actions against directors and officers of things of this sort. Clearly, a title policy, by definition, is part of a secure transaction. The note and the title go together, because the title insurance is the lien that supports the collateral for the loan. All residential loans are collateralized loans. And so that's not remarkable that the CPL is entirely different. It's a contract right. And they don't dispute that it's two different risks. There's a risk that you won't get a lien on the collateral for the loan. There's the risk that the agent will steal the money. In this case, the agent stole the money, and First American, in all due respect, is trying to avoid liability for that. What about his argument that, well, but First American's had to pay 4.9 million, you know, more than the 4.5 million? Yes, Your Honor. Let us address that. The facts in the record are that Saylor, the agent, misappropriated the $4.5 million loan. He used $2 million of that loan to actually try to buy this property for himself, not for the true owner. He then, there was a note for $3 million from the people he was buying it from. And $2.5 million of the loan proceeds went out for other things. We don't know what happened to them. All $4.5 million were lost. District Court held the actual loss was the entire $4.5 million. Now Saylor defaulted on his note to the people he was buying this property from. And they brought a foreclosure action against him. As a result of that, First American became involved and paid off the $3 million note to the people he was supposed to buy the property from. So that's where the $3 million comes from. It then tendered, First American tendered the property to JPMC to fulfill its obligations under the title insurance policy. JPMC disagreed with that and wanted damages. The District Court agreed with First American and said, no, you have to take the property. That went to this court on interlocutory appeal. And the parties eventually settled. They had a receiver who was appointed by the District Court who sold the property. $2 million. $2 million. It tendered at the JPMC. JPMC never got a lien on the property. This was a result of litigation caused by the fraud of First American. A lot of money the JPMC received was $2 million. The FDIC received $1.8 million. That's $3.8 million. So that just doesn't hold up, Your Honor. On standing, counsel makes the argument that it only goes to jurisdiction. Clearly a foreigner to a contract should not be put in a better position than somebody who is a beneficiary. It may not be a third party beneficiary of the contract. And his argument would make a foreigner to a contract be in a better position than others. Something smells a little fishy though about this stipulation between the FDIC and Chase post-discovery about stipulating that FDIC retain the CPL. Isn't that a little fishy? I don't think so, Your Honor. If you look at the record, JPMC admitted from the very beginning of that litigation, way before the stipulation, that they did not have, they did not own the CPL. If you look in the record, look in the file, the pleadings were filed. JPMC never contended it owned the CPL. Hadn't First American said, ah, but wait, I got a Rule 60B motion that Chase in other cases is claiming it does own the CPL. Well, there is that. But there are two things. They claim there was a complaint filed in a case where JPMC was trying to recover on a CPL related to Washington Mutual Bank. That's true. We don't deny that. You read between the lines, but subsequently JPMC dismissed that case with prejudice. So that case was dismissed with prejudice. The other argument is there was a letter sent by JPMC counsel in another case demanding indemnity based on the CPL. That has no legal effect. But the main point is that the district court said under Rule 60B, even if I had known of these two things, it wouldn't have changed my decision because of the stipulation, because of what 3.5 says, because of the testimony of Mr. Schott of the FDIC, this is routinely and customarily what the FDIC does, and the fact the FDIC has been asserting CPL rights throughout the country routinely. So based on that evidence, the court held, even if I had known about these two things, it wouldn't have changed my decision. But was it proper for the district court to rely on the CPL this parole post-discovery stipulation in order to interpret the P&A agreement without first finding or determining whether or not there was some ambiguity in the agreement? Well I mean, the court also found that they had no standing to challenge it. And then you had the stipulation, then you had the testimony. So I mean, I think the court acted entirely proper in this case. It's... Is it the FDIC's position that WAMU would never have made the loan at all if they had known of the fraud? I mean, is that why the whole $4.5 million loan by WAMU was a loss? Well clearly, Your Honor, if WAMU hadn't failed, and they had made the $4.5 million loan, they would have lost $4.5 million. I mean, that's the reality of the situation. All that money was gone, never recovered. The court held the actual loss was $4.5 million. Now, if WAMU hadn't failed, it could have tried to recover that $4.5 million in two ways. Either through the title insurance policy, which JPMC did, or through the CPL. Clearly, we agree, WAMU could not have recovered more than $4.5 million. Why couldn't... Based on the FDIC's position of fraud, why do you even need the CPL as a basis? Why couldn't you just sue directly for the fraud? You know, sue First American for fraud of its agent. I don't know the answer to that, Your Honor. I assume that maybe they could have, but they clearly had this contractual right. They routinely retain these closing protection letters to go after people who commit fraud against the bank. That's a wholly different thing than whether you have a lien-perfecting obligation. I'm actually almost surprised that there are other cases. I mean, it seems like what Mr. Saylor with Patriot Title did was so brazen. I can't imagine many people trying to do this. Your Honor, you'd be surprised. There are a number of cases like this. The two Florida cases, for example, are very similar. The vision mortgage case we cite in our case, the New Jersey appellate case, very similar situation. And that's a perfect case for... It's a perfect example of this case because there, vision mortgage made the loan, transferred the loan with the title insurance policy. There was fraud. The trans...the assignee of the loan exercised their rights to foreclose because they had title. Vision mortgage originator under the CPL sued for fraud. And the damages were the amount of the actual loss minus the assignee got. It's exactly what we have here. The only difference is JPMC never got the lien and they have this litigation result in itself. It's exactly the same case. You said there are other cases out there. Have other circuit courts ruled on whether parties in the position that First American is in have standing to bring a lawsuit of this nature against... Not exactly of this type, but the other cases we cite, GE, CCMC in the 9th Circuit, Interface Cantor in the 11th Circuit, are cases where lessees...or lessors, I'm sorry. It's really standing to argue its interpretation of the First American. The lessees, they were trying to...they brought a suit trying to say that the lease was adopted by JPMC and therefore they get 100% recovery versus the FDIC receivership, which had less. And the court said you don't have standing to interpret what the contract means. It's very much the same thing we have here. Now before I lose my time, the argument was the FDIC failed to prove damages in this case. That's just a red herring. The district court held that the actual loss was $4.5 million. The P&A agreement says that any asset transfer for which there is not a designated value is transferred at book value. So the FDIC said, okay, we'll give you a credit. The actual loss is $4.5. We'll give you a credit for the book value that WAMU was carrying the loan. That was the $2.7. Yes, Your Honor. And so the result of that was the $1.8. First, the American claims that we didn't prove that because PX7 was not properly admitted. I guess the argument is, well, JPMC would have paid the same $1.88 billion even if this loan weren't in the package. And that's certainly true. But all that proves is we didn't get any value. I mean, if the argument is JPMC would have paid $1.88 billion even if the loan weren't there, then the FDIC got no value and we shouldn't have to credit anything against the $4.5 million subject to double recovery. It just doesn't make any sense. My time is up, Your Honor, and we'd ask that the district court be affirmed. Okay. Thank you, Mr. Madden. Sure. Thank you. A few points. Under that there's theory that they didn't get any value, that the loss was $4.5 million. That means that the FDIC didn't get money on any single solitary loan among the $1.8 billion transaction. The book value was $307 billion. They got $1.88. They have an obligation to prove damages associated with an actual loss caused by the fraud. They have to show we got X amount less because of the fraud than we would have otherwise. They didn't even try to do it. They pointed to a fictional book value. The book value of Wamuu's assets was $307 billion. They didn't draw any correlation to the damage caused by the fraud. Judge Donald, you focused on the closing protection letter. There are provisions in there that make it clear that they had to hold title. First, the closing protection letter says that they offer this protection when title insurance is specified for your protection. When title insurance is specified for your protection. Not anymore because they sold it. And then there's a provision in the middle of the paragraph that says, and this is protection for the homeowners. It says, if you are a lender protected under the foregoing paragraph, your borrower is protected as if this letter were addressed to your borrower. If you are a lender. The FDIC is not a lender and so have they eviscerated all homeowner's rights to protection under this closing letter? No, they haven't because the letter makes clear that it only goes to those who hold the loan. The FDIC counsel referenced trying to move away from the credit documents provision. A clear provision that says the FDIC has sold credit documents and they said there's no definition of credit documents. I don't think they read their contract because there is. There is a specific definition and it's on page 3 of that 30 page agreement that defines credit documents. And it defines credit documents as, quote, any agreement or other document relating to or executed in connection with a loan. The FDIC has not stated, nor could they, that this closing protection letter was not executed in connection with a loan. It clearly was. WAMU loaned $4.5 million and the reason they loaned it is because First Americans said we'll give you a title policy and we'll give you this closing protection letter in connection with your loan. And then the FDIC promptly sold all of those loan files including the credit documents. The standing issue, remind the court that in those cases standing is jurisdictional by someone who's trying to sue. Here that is not what we have. If this agreement said we hereby convey the closing protection letter regarding that mansion up in Michigan that some guy bought, if that was what the agreement said and the FDIC tried to sue on it, are they saying that we couldn't come in and say the agreement says that they sold it? No, I'm sorry, you don't have standing to say that. It's clear as a bell. You can't simply change the contract or ignore its terms and say nobody can look at it as evidence. We're not trying to enforce it. We're trying to offer it as evidence. Ignoring the clear language of the purchase agreement to let the FDIC sue on a CPL on one hand while Chase can sue on a title policy on the other hand would wreak havoc on the title industry. It would wreak havoc on litigation management and it culminates in all of these errors. As the FDIC admits in their brief, CPLs are part and parcel to title insurance policies as a matter of industry practice run together. If they run together, every issue in this appeal goes away and the host of litigation that would follow. You don't have to determine one party's damages based on a non-party's recovery. You don't have to invent a fictional damages theory based on book value instead of your actual loss. You don't have to rely on somebody else's business records to try to figure out why somebody lowered the book value with no evidence as to why it happened. And you don't have a chance of double recovery. The Sixth Circuit, by the way, held that First American deeding title over for which it paid $3.1 million was payment. Not the $2 million that J.P. Morgan realized by waiting for two and a half years while the real estate market collapsed before they sold the house. The Sixth Circuit held that that moment of deeding over title for which First American paid $3.1 million, clearly the value of the property at the time they sold it, was payment. So that's 3.1 plus 2.2 rendered here, $5.3 million out of $4.5 million. If First American paid it, whether that's the measure of the loss to the FDIC, I don't know if that follows. No, no, no. It's not a measure of the loss to the FDIC. What I'm saying is the total recovery, as even Judge Batani held, has to be $4.5 million. That was the loss. And so First American, in order to make payment on that, had to do both of those things. But you were obligated to get that title good because that was what your title policy was. Exactly. And we paid $3.1 million. If Chase owned both rights, as it should, its potential damages would be very straightforward, the amount of the loan. But in the FDIC's world, you would have to have a total recap on recovery by two separate litigants and separate proceedings. And how do you determine which party gets what? That's what happened here. Does it just become a race to the courthouse with the FDIC running with a CPL in one court and J.P. Morgan running with a title policy in the other court? In order to get a recovery for the same lending risk. The purchase agreement answers these issues. The assets are all Chase's. Frankly, so does the language of the CPL, which says that it was offered only to the lender. We just asked the court to implement the clear language of the agreement and the clear practice of the industry by saying that all of the loans, including the credit documents and the CPLs, were transferred to Chase. Thank you, Mr. Karas. Your time has expired. Once again, we appreciate arguments by both counsel here. It's a very complicated case. Thank you. This is incredibly complicated. Yes, very complicated case. So we definitely appreciate the briefing and the arguments today. The case will be submitted. Thank you very much. Thank you. You may call the next case.